## DIVIDENDS TO CREDITOR OF INSOLVENT SECURED BY COLLATERAL.

THE STATE NATIONAL BANK v. ESTERLY, RECEIVER.

69 Ohio State—Decided, October 13, 1903.

*Insolvent Debtor—Property in Hands of Receiver—Creditor With Collaterals to Secure Claim—Receives Only Dividends on Debt—After Deducting Proceeds of Security—Though Claim was Allowed in Full.*

Where the property of an insolvent debtor, by order of court, is placed in the hands of a receiver to be administered upon for the payment of the insolvent's debts, a creditor who holds collaterals taken to secure his claim, and upon which he has realized before a dividend is declared, is entitled to a dividend on only so much of his debt as remains after deducting the proceeds of the collaterals; and this sum may be ascertained at the time the dividend is declared, although the claim had formerly been proven and allowed for the full amount.

Error to the Circuit Court of Columbiana County.

The plaintiff in error commenced an action in the Court of Common Pleas of Columbiana County against the defendant in error, who was, and is, receiver of the insolvent firm of J. Esterly & Co., to compel the allowance of dividends on certain notes owned by plaintiff in error upon which said insolvent firm were liable as indorsers.. One of said notes is dated August 1, 1896, and calls for the payment of $5,500 four months after date, with eight per cent. interest per annum after maturity, and signed by "Columbiana Pump & M'ch Co." The other note is dated October 24, 1896, and calls for $3,-132.70 payable four months after date, with eight per cent. interest after due until paid. This note is signed by "The Ohio Lumber & Mining Co." It was stipulated in each note that if the interest was not paid when due, the same should be added to the principal, and the aggregate should draw interest at same rate until paid. When J. Esterly & Co. indorsed and transferred said notes to the bank it also transferred collaterals to secure their indorsement, from which collaterals the bank realized such amounts, that if applied, materially reduce the claims against indorsers. Inasmuch as the answer of the receiver admits all the facts alleged in the petition, except their legal effect, the petition is here copied, omitting the caption :

"The plaintiff says it is a national bank organized and doing business under the laws of the United States.

"That the defendant, Aaron Esterly, is receiver of J. Esterly & Co., having the powers of such receivers in the state of Ohio.

"For its first cause of action against the defendant, plaintiff says that on May 11, 1898, being the owner of claim against J. Esterly & Co., based on a promissory note, of which a copy, with all indorsements thereon, is hereto attached, marked 'Exhibit A,' and made a part hereof, it presented the claim on said day, May 11, 1898, to said Aaron Esterly as such receiver, for allowance against the said estate of which he was receiver, and thereupon on said date the claim was allowed by indorse-

ment thereon as follows: 'May 11, 1898. Allowed, subject to distribution. Aaron Esterly, as surviving receiver of J. Esterly & Co., bankers.'

"That said J. Esterly & Co. were, and still are, liable on said note as indorsers thereon. Said note bears date August 1, 1896, is due in four months from date, and draws interest after maturity at eight per cent.

"That at the time of the presentation of said claim for allowance, there was due thereon to plaintiff from J. Esterly & Co. and said receiver, the sum of $1,187.48. That afterwards, as appears by indorsement on said note, and on April 22, 1901, there was paid thereon the sum of $834.73, being realized from makers of note and assignee of makers of same. After deducting such payment and computing interest according to law, there was due on said note June 1, 1901, the sum of ten hundred eighty-nine dollars and thirty cents ($1,089.30), which amount still remains due from the estate of J. Esterly to the plaintiff, and remains wholly unpaid.

"That afterwards and on or about May 30, 1901, the said Aaron Esterly, receiver, informed the plaintiff that a dividend of about thirty (30) per cent. was to be made by him as receiver to the various creditors; that he proposed to compute such dividend upon the balance at present owing, exclusive of interest, instead of computing upon the amount allowed as aforesaid. To this method of computation plaintiff objected, and thereupon said Aaron Esterly, through his attorney, W. G. Wells, notified the plaintiff that the claim was wholly disallowed and rejected, and that the plaintiff would be obliged to bring suit and have the question settled in court.

"The plaintiff says that no amount has been paid on said claim by the receiver, but all amounts paid thereon have been realized from the collaterals held by the plaintiff for the payment of said note.

"The plaintiff further says that the dividend should be computed on the amount owing at the time of the insolvency of said bank and the appointment of the receiver therein, viz., December 8, 1896, and that at that time the entire principal was due on said note; if interest is added to other claims in the computation, then interest should be added to the claim of the plaintiff before computing the dividend.

"The plaintiff further says that the said receiver had no right to disallow the plaintiff's claim because of the

dispute in the mode of computing the dividend, and his action therein was and is illegal and void.

"Second Cause of Action.—Making the allegations herein preceding the first cause of action a part of the second cause of action the same as if herein repeated, the plaintiff says for its second cause of action against the dedefendant—

"That on February 24, 1897, being the owner of a promissory note, of which a copy with all indorsements thereon is hereto attached, marked 'Exhibit B,' and made a part hereof, the plaintiff duly presented the same for allowance to the defendant, and his then co-receiver, Josiah Rohrbaugh, and the same was thereupon duly allowed, in writing, as a valid claim against said estate for the full amount of said note, to-wit, three thousand and one hundred thirty-two dollars and seventy cents ($3,132.70). Said note bears date October 24, 1896, is due four months after date, and draws interest after maturity at the rate of eight per cent. per annum. That said J. Esterly & Co. are liable on said note as indorsers. That said note had been properly presented and protested for non-payment when the same became due.

"That on said claim, after such allowance, the plaintiff realized from collaterals held for the payment thereof, payments as follows: July 16, 1897, $1,579.22; May 25, 1898, $363.08; July 10, 1899, $60.60; April 29, 1901, $84.01; leaving a balance now due with interest computed to June 1, 1901, of $1,676.58.

"The plaintiff says that after the said allowance of said claim, and on or about May 30, 1901, the defendant, desiring to pay a dividend on claims against the estate of J. Esterly & Co., notified the plaintiff that such dividend would be computed on the balance now owing, exclusive of interest, instead of on the amount owing at the time said claim was allowed; and the plaintiff having refused to agree to accept the dividend on that basis, the defendant then, through his attorney, wholly disallowed the claim and notified the plaintiff that it would have to bring a suit to have the question determined in court.

"The plaintiff says that no amount has been paid on said claim by the receiver, but all amounts paid thereon have been realized from the collaterals held by the plaintiff for the payment of said note.

"The plaintiff further says that the dividend should be computed on the amount owing at the time said claim was allowed, and if interest is added to other claims in

the computation, then interest should be added to the claim of the plaintiff before computing the dividend.

"The plaintiff further says that the said receiver had no right to disallow the plaintiff's claim because of the dispute in the mode of computing the dividend, and his action therein was and is illegal and void.

"Wherefore, plaintiff prays that the defendant be ordered to treat its claims as valid and subsisting claims under the former allowance thereof; that he be ordered to compute the dividends on the amount owing at the time of the declaration of insolvency of said bank, and the appointment of the receiver therein, to-wit, December 8, 1896; and if interest is added to other claims before the computation of dividends, then to add interest to plaintiff's claim; and the plaintiff prays for such further order in the premises as may fully protect its rights in law and equity against the defendant.

"J. A. MARTIN and
"BREWER, COOK & McGOWAN,
"Attorneys for Plaintiff."

The following is the answer of the receiver:

"Now comes Aaron Esterly, as receiver of the estate of J. Esterly & Co., and the defendant herein, and for answer admits all the allegations of fact in the plaintiff's petition; but denies that said claims should be allowed by the said receiver for a greater amount than which amount now remains unpaid on said notes.

"W. G. WELLS,
"Attorney for Defendant."

The pleading presenting purely questions of law, the court of common pleas found against the plaintiff bank as to the basis upon which dividends should be computed. It appealed from the judgment and order of that court to the circuit court, where the cause was heard and submitted on the pleadings. The circuit court made the following findings and order:

"This cause coming on for hearing on this day was submitted to the court on the pleadings, and the court being fully advised of the issue raised by said pleadings, and the questions of law involved, do, upon the allegations made in the answer, find that all the payments made upon the two notes described in the petition subsequent

to the presentation and allowance of said claims by the receiver, and subsequent to the date of the insolvency of said J. Esterly & Co. and the appointment of the receiver therein, to-wit, December 8, 1896, should be credited upon said notes, and that the balance due after crediting said payments is the basis upon which the plaintiff should receive dividends *pro rata* with the other general creditors of said insolvent bank. That the balance due upon said notes should be allowed as a valid claim against the estate of J. Esterly & Co., and that said balance is the sum of $1,596.09, and should be allowed as of the date of May 11, 1898. Wherefore, the court finds that the balance due on said notes on May 11, 1898, to be the sum of $1,596.09, that the same is a valid claim against Aaron Esterly, receiver of J. Esterly & Co., and it is hereby ordered, adjudged and decreed that said claim be and is hereby allowed; that the defendant be ordered to allow said claim, and that said sum of $1,596.09 be the basis upon which dividends shall be paid plaintiff in common with other general creditors and that said allowance be made as of the date of May 11, 1898."

The court ordered the costs paid out of the funds in his hands as receiver. The plaintiff in error filed a motion for new trial, which was overruled, and error is prosecuted here to reverse the findings and order as to the basis for computing the dividends.

*J. A. Martin* and *Brewer, Cook & McGowan,* for plaintiff in error.

*W. G. Wells,* for defendant in error.

PRICE, J.; BURKET, C. J., SPEAR and DAVIS, JJ., concur; SHAUCK, J., dissents.

We learn from the averments of the petition filed in the lower court by plaintiff in error, that at some date prior to the appointment of a receiver for the firm of J. Esterly & Co., it had become liable to the plaintiff bank as indorsers upon two promissory notes mentioned in the foregoing statement of this case, and that the liability of the firm had become fixed when the notes were properly presented to the makers thereof and protested for non-payment. It also appears that to secure the bank in accepting the notes bearing such indorsements, J. Esterly

& Co., at the time of their transfer, delivered to it certain valuable collaterals as security for their contracts of indorsement, and from which collaterals, after the receiver was appointed, the bank realized from time to time in substantial sums, which, if applied as credits on the obligations of indorsement when collected, would materially reduce the obligations before the receiver was ready to pay a dividend.

The receiver was appointed on the eighth day of December, 1896, about the time the larger of the two notes became due. On or about the eleventh day of May, 1898, the bank presented its claims to receiver for allowance, and they were allowed "subject to distribution." The amounts which the bank realized on the collaterals were collected at different times after the appointment of the receiver.

On or about the thirtieth of May, 1901, the receiver notified the bank that he was ready to make a dividend to the various creditors, and that he would compute such dividend upon the balance then owing, exclusive of interest, and not upon the full amount of the indorsements of the insolvent firm. On refusal to accept a dividend on the proposed basis, the bank brought its action in the court below to have its rights determined. It failed in its contention in the lower courts, and its counsel thus formulates the inquiry in this court: "Shall dividends be computed: (1) Upon the amount due at the date of the appointment of receiver? or, (2) Upon the amount due at the time the claim is presented and allowed? or, (3) Upon the balance unpaid at the time of settlement?"

This case has been considered with two others involving similar questions, which cases will be stated at the close of this opinion. Learned counsel representing the parties in each case have been heard orally, and they have submitted briefs containing careful discussions of the points involved, wherein are cited a long array of cases adjudicated in the English and American courts, the latter embracing both state and federal. Numerous text-writers have been drawn upon by each side of the con-

troversy, until we are constrained to agree with counsel that the authorities are about equally divided, both as to numbers and their apparent weight. Their reconciliation is impossible, and a careful review of them here would be fruitless labor.

Counsel for plaintiff in error in this case, and to some extent, counsel in the other cases herewith decided, argue their causes as if the dispute arose in the settlement of an estate under a deed of assignment for the benefit of creditors, and lay down the proposition to govern this case, that: "By the deed of assignment, the equitable ownership of all the assigned property passed to the creditors. They became joint proprietors and each creditor owned such a proportion or part of the whole as the debt due him was of the aggregate of the debts. The extent of this interest was fixed by the deed of trust  *   *   *." This proposition is found in many of the authorities cited in behalf of the bank, and indeed it seems to be the favorite reason for the holdings made. Notably this is true in *Miller's Appeal,* 35 Pa. St., 481; *Merrill* v. *Bank,* 173 U. S., 131; and *Bank* v. *Armstrong,* 59 Fed. Rep., 372, cited for plaintiff in error.

If, for any reason, we are required to consider this and its kindred cases, under the law governing the mode of administering estates under our assignment laws—which we do not concede—we are of opinion the proposition is entirely too broad, and is subject to important limitations. In cases of assignment under our insolvent laws, the legal title of the property of the assignor passes to the assignee, in trust for the benefit of not some, but *all* creditors of the assignor. The unsecured creditor is as fully represented by that title as is he who holds collateral security for his claims, and if he becomes the equitable owner of such "a proportional part of the whole as the debt due him is of the aggregate of the debts," his equitable title is not weakened nor his equitable joint share decreased by the fact that another creditor has security for all or part of his claim. But to allow a dividend to the secured creditor on the basis of his entire

claim unreduced by collected collaterals, would diminish the share of the general or unsecured creditor in the estate of the insolvent debtor. In other words, to pay a dividend on more than is actually due on a secured claim will unjustly reduce the general fund in which the unsecured creditor is entitled to share.

But we do not think the interest or title of creditors in the assigned property is the determining factor, if even they have an equitable ownership. The deed of assignment, under our statute, must be general and inure to the benefit of all creditors, and their rights are to be worked out through the assignee as they appear from time to time during the administration of the trust. In such case the creditors are not purchasers of the estate in proportion to their claims, for investigation and proper defense against the claims of one or more, may modify or extinguish their interest in the estate, so that whatever title, equitable or otherwise, a creditor may have in the assigned property, it is at best but contingent, and subject to adjudication with other demands held against the debtor.

As said by Owen, C. J., in *Mannix, Assignee,* v. *Purcell et al,* 46 Ohio St., 135:

"No higher or better right or title to any of this property passed to the assignee than the assignor held. His creditors acquired no new rights or remedies in or against it by force of the assignment. The assignee simply represents them and their rights, which he has undertaken to enforce by the plain processes appointed by statute. They do not in any sense stand to the assigned property in the relation of purchasers. The beneficiaries of the property which the assignee is now seeking to subject to the payment of the assignor's debts, are free to assert against the latter every right and claim which, before the assignment, they could have asserted against the assignor."

The equitable ownership of a creditor in the assigned property, if any there be, is contingent merely, because its force and validity depend upon the subsequent events. Such creditor must present his claim to the assignee for allowance within a certain time; if rejected, he must sue

within a specified time. Default in either loses his right to share in the estate unless saved by other provisions of our law. If he presents his claim, before it is allowed, or any payments made thereon, "he must make and file an affidavit setting forth that the said claim is just and lawful, and the consideration thereof, and what, if any, set-offs or counter-claims exist thereto; what collateral or personal security, if any, the claimant holds for the same, or that he has no security whatever; and the assignee or trustee, *or any creditor* shall have the right to examine the claimant under oath touching any such collateral or other security, or any other matter relating to said claim within such time and under such regulations as shall be prescribed by the probate judge    *    *    *." See Section 6354, Revised Statutes of Ohio.

The making and filing of this affidavit is not optional with the creditor, but it is essential to the proper allowance of his claim, and it proceeds upon the evident policy of the law that the affidavit will truthfully disclose both the nature of the claim and its condition with reference not only to payments made, but as to what admitted set-offs or counter-claims exist whereby the creditor's demand may be in part or wholly satisfied. This procedure is against a theory, that by assignment, a creditor acquires a definite equitable ownership in the assigned property that shall measure his rights to dividends in the further administration of the estate. It further argues that its purpose is to give the assignee, and the probate court, on the report of the assignee, full knowledge of the condition of each claim, in order that rights of the general, as well as the secured, creditors may be determined. If valid off-sets then exist, if good collaterals are held from which collections are being made, they are to be so applied that the general creditors may receive their equitable portion of the estate. And we think that this information as to the condition of the claims is to be furnished so that a dividend may be made on equitable principles, because whatever amount a secured creditor receives beyond what is actually due him after application of money realized from collaterals, or after allowance of

admitted off-sets, must be taken from the general fund and therefore from the general creditor. Therefore, it seems to us that we should hold and answer the third inquiry of counsel by saying that the dividend should be computed "upon the balance unpaid at the time of the settlement."

The result to be thus reached is the result that would be reached in an action at law between the creditor and the debtor, because the latter could have the court or jury fix the true amount he owes the creditor, after deducting valid set-offs and counter-claims, and the balance would be the real debt.

We do not now see why the standing in the probate court in an assignment case should be better than in the action at law, because the rights of the creditors in reference to such claims as are here involved can be fully worked out in administration of the assigned estate. When the estate is ready to warrant a dividend and it is known from the proof of claim that off-sets or collaterals existed when the claim was allowed, the amount of the admitted set-off, or what has been paid from the collaterals, should be deducted, and the balance due is the true basis for a dividend.

We have devoted time to this extent in discussing the rule in assignment cases, because its discussion pervades so largely the briefs of counsel wherein they liken the cases at bar to assignment cases. But the analogy is not complete. In cases under review, receivers were appointed, and it is not open to debate, that title to the debtor's property does not vest in the receiver, but remains in the debtor, subject to the possession and control of such receiver, until he sells the same under the direction of the court, when the title passes to the purchaser. Creditors who had no lien or title prior to the appointment of the receiver gained neither in any sense or degree through the receivership. Hence it is that property in the hands of a receiver is considered as in the court and under its control to be administered so as best to subserve the ends of equity; and when the debtor's estate becomes assets in his hands, the general creditors acquire rights

which the court will protect by placing all the creditors on an equality as far as possible. This is the rule stated in *Bank* v. *Bank,* 33 N. J. Eq., 266, and many other cases.

Therefore the argument of an equitable ownership by the creditor in assigned property can have no application whatever here. But if we are right in our views as to the rights of creditors in assigned property, it seems quite clear that the same rule should be enforced in settlements of estates placed in the hands of a receiver.

All sums realized on the collaterals in this case were collected after the appointment of the receiver. Part was collected by the bank before, and the remainder after, the proving and allowance of its claims; but whether before or after allowance we think is immaterial.

When the debtor's property has been reduced to money and under the direction of the court the receiver is ready to make a dividend, there is nothing inequitable in crediting these amounts as payments *pro tanto.* The law would compel such an application if it was resisted, because the amount due the creditor is his claim less what has been paid for its liquidation, either directly or indirectly. When this is done, and not until then, do the secured and unsecured creditors stand on an equal footing. When that is done the secured creditor has received the benefit of his security and is ready to claim a share in the general estate with the general creditors. Otherwise, as before stated, the secured creditor would hold the avails of his securities actually reducing his demand, and would also take from the general estate a portion which belongs to the unsecured creditors.

This latter would be inequitable, while the former rule would do even and exact justice between all parties.

To elaborate this doctrine, or quote from cases in which it is found, is not necessary. We think the principle is right and approve it as has been done in a long line of cases, and by the best of modern text-writers.

We therefore hold the circuit court did not err in its judgment, and the same is affirmed.

*Judgment affirmed.*